IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY PATRICK, M.D., | |
| Plaintiff, | |
| v. | Civil Action No. 19-2106-CFC |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | |
| Defendant. | |

Randall E. Robbins, Randall J. Teti, ASHBY & GEDDES, Wilmington, Delaware; Robert E. Saint, EMSWILLER WILLIAMS NOLAND & CLARKE, LLC, Indianapolis, Indiana

> *Counsel for Plaintiff*

Michael J. Logullo, RAWLE & HENDERSON LLP, Wilmington, Delaware; Joshua Bachrach, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, Philadelphia, Pennsylvania

> *Counsel for Defendant*

## **MEMORANDUM OPINION**

March 19, 2021
Wilmington, Delaware

COLM F. CONNOLLY

UNITED STATES DISTRICT JUDGE

Plaintiff Amy Patrick, M.D. filed this lawsuit against Defendant Reliance Standard Life Insurance Company pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001. Dr. Patrick seeks a declaration that Reliance erroneously terminated and denied her long-term disability benefits and an order compelling Reliance to pay her all past and future disability benefits she is due and the interest, costs, and reasonable attorney fees she incurred in bringing this action. Pending before me are the parties' cross motions for summary judgment. D.I. 23; D.I. 26.

## I.      BACKGROUND

In 2007 Reliance issued a group long-term disability insurance policy to Mid-Atlantic G.I. Consultants, PA (MAGIC). "G.I." is an abbreviation for gastrointestinal. *GI, Merriam-Webster,* https://www.merriam-webster.com/dictionary/gi (last visited Mar. 18, 2021). Gastroenterology "is the branch of internal medicine that focuses on the structure, functions and diseases of the digestive tract." *FREIDA Gastroenterology (IM) Residency and Fellowship*

*Listing,* AM. MED. ASS'N https://freida.ama-assn.org/specialty/gastroenterology-im (last visited Mar. 19, 2021).[1]

The policy covers two "classifications" of MAGIC employees: "Physician" and "Employee except a physician." AR7. Reliance agreed in the policy to "pay a Monthly Benefit if an Insured [employee] . . . is Totally Disabled as the result of a Sickness or Injury covered by this Policy," "submits satisfactory proof of Total Disability," and meets two other criteria not relevant to this case. AR17. The policy defines "Totally Disabled" and "Total Disability" for the "Physician" classification to "mean[ ] that as a result of an Injury or Sickness . . . an Insured cannot perform the material duties of his/her Regular Occupation." AR10. Under the policy,

> "Regular Occupation" means the occupation the Insured
> is routinely performing when Total Disability begins.
> [Reliance] will look at the Insured's occupation as it is
> normally performed in the national economy, and not the
> unique duties performed for a specific employer or in a
> specific locale.

AR9.

---

[1] "FREIDA," the Fellowship Residency Electronic Interactive Database Access website, is hosted by the American Medical Association. Reliance cited FREIDA as an authoritative source for medical background information. D.I. 29-1 at 2. I will therefore take judicial notice of the material contained on the website. *Cf. Gonzalez v. Apfel*, 113 F.Supp. 2d 580, 590 n.15 (S.D.N.Y. 2000) (taking judicial notice of a fact from an encyclopedia published by the American Medical Association).

Dr. Patrick joined MAGIC in 1996, having just completed a three-year fellowship in gastroenterology.  She graduated from the University of Pennsylvania Medical School in 1989 and completed a residency in internal medicine in 1992 before starting her gastroenterology fellowship.  She was Board Certified in internal medicine from 1992 to 2002.  She has been Board Certified in gastroenterology since 1999.  Pursuant to a written contract with MAGIC dated November 1, 2005, Dr. Patrick "accept[ed] such employment as a physician to provide internal medicine and gastroenterology services" and to "actively engage in the practice of medicine for [MAGIC]."  AR1648.

In 2007, Dr. Patrick suffered a debilitating injury to her right shoulder and underwent surgery.  The surgery was only partly successful, and the right shoulder injury prevented Dr. Patrick from performing her gastroenterological duties with MAGIC.  In July 2008, Dr. Patrick stopped working.  Shortly thereafter, she submitted to Reliance a claim for long term disability benefits.  Dr. Patrick listed "gastroenterologist" in the "Occupation Title" box in the Reliance claim form. AR216.  She stated in her claim that her job required her to perform, among other things, endoscopic procedures.  AR219.  An endoscopy involves the insertion of an illuminated tubular instrument into the body to visualize the interior of a hollow organ or body part for diagnostic or therapeutic purposes.  A colonoscopy is an

3

endoscopic examination of the colon.  A gastroscopy is the endoscopic

examination of the stomach and part of the small intestine.

In November 2008, as part of its evaluation of Dr. Patrick's disability claim,

Reliance asked MAGIC to provide it with Dr. Patrick's job description.  MAGIC

responded with a letter to Reliance that stated: "Amy Patrick MD is a full-time

gastroenterologist.  Her daily routine involves a combination of highly demanding

physical (endoscopic procedures) and cognitive activities."  AR233.  Reliance also

requested and received medical records from Dr. Patrick's treating physician, Dr.

Louis Bigliani, an orthopaedist at Columbia University in New York.  Those

medical records consistently described Dr. Patrick as a gastroenterologist.  They

did not describe her as an internal medicine specialist.

In April 2009, Reliance approved Dr. Patrick's claim and began to pay her

monthly disability benefits.  *Patrick v. Reliance Standard Life Ins. Co.*, 694 F.

App'x 94, 96 (3d Cir. 2017) ("*Patrick III*"); AR2507–08.  Between April 2009 and

2013, Reliance periodically reviewed Dr. Patrick's claim to determine if she

remained eligible for benefits.  As part of its review process, Reliance obtained

medical records from Dr. Bigliani's office and had Dr. Bigliani complete

Attending Physician's Statement (APS) forms Reliance provided to him.  *See*

AR499, 544.  The records and the APSs completed by Dr. Bigliani consistently

referred to Dr. Patrick as a gastroenterologist.  The internal notes of the Reliance

examiner who handled Dr. Patrick's claim in 2009 and 2010 referred to Dr. Patrick

interchangeably as "internal medicine specialist," "GI specialist," and

"gastroenterologist." *See, e.g.,* AR2458–59.

In June 2009, Reliance concluded that Dr. Patrick's "major problem was she

lacks endurance to perform colonoscopy and gastroscopy due to weakness."

AR2458. This determination was consistent with Dr. Bigliani's findings. In notes

he provided to Reliance for his examination of Dr. Patrick in March 2010, for

example, Dr. Bigliani wrote:

> At this point I would consider [Dr. Patrick] partially
> permanently disabled. I think that she should be
> considered for disability as I do not think that she will
> gain adequate enough strength not to get fatigued with
> the type of work that she does. *She really cannot do the
> demanding work that it takes to do colonoscopies all day.
> She can probably just about do a half day['s] work
> without aggravating the shoulder.* I think that it is
> completely reasonable given the fact that she has had a
> major transfer of muscles in her right shoulder. She also
> has had a significant paralysis of the right trapezius
> muscle. Furthermore, if she tries to work a full day it
> will exacerbate the left trapezius muscle spasm.
> Therefore my recommendation to her is partial
> permanent disability.

AR2485 (emphasis added). Reliance concluded in March 2010 and again in March

2011 and August 2013 that Dr. Patrick had reached a plateau in her recovery, that

she was not expected to ever regain full function of her right arm, and that she

would be limited to part-time light or full-time sedentary work long-term.

5

AR2459–62.  By letter dated February 2011, Reliance informed Dr. Patrick that her "benefits are payable . . . until she reache[d] age 67, as long as she remain[ed] disabled and continue[d] to meet all other provisions of the group policy through that date."  AR2524.

Reliance initially paid Dr. Patrick the maximum monthly payments available to her under MAGIC's policy.  But in mid-2010, Reliance learned that Dr. Patrick had returned to part-time work and had posted a net income for the month of March 2010.  *Patrick III,* 694 F. App'x at 96.  Reliance notified Dr. Patrick that it would reduce her monthly benefit by 50% of the amount of her net monthly income because the policy's "Rehabilitation Provision" provided that if a beneficiary returned to work part time, "the monthly payment is reduced by 'an amount equal to 50% of earnings received' from the[ ] part-time work."  *Id.*  Dr. Patrick objected to this reduction, and administratively appealed Reliance's decision.  She argued that she had not "received" any earnings because the funds she earned were applied to the large negative balance she owed MAGIC for overhead costs such as staff salaries and malpractice insurance premiums. Reliance rejected this argument and reduced her benefits.  *Id.*

Dr. Patrick did not work between January of 2011 and November of 2013, and Reliance paid her the full disability benefit during that time.  *Id.*  But when Reliance learned that Dr. Patrick had earned income in November 2013, it again

reduced her monthly benefit. *Id.* That reduction led Dr. Patrick to file a lawsuit in this Court in 2015. She lost that suit because the Magistrate Judge, the District Court Judge, and ultimately the Third Circuit panel that presided over her case all agreed that Reliance acted reasonably when it rejected Dr. Patrick's argument that because the funds she earned were applied to offset the overhead costs she owed MAGIC she had not "received" any earnings. *Patrick III*, 694 F. App'x. at 98; *Patrick v. Reliance Standard Life Ins. Co.*, 2016 WL 5662138, at *3 (D. Del. Sept. 29, 2016) ("*Patrick II*"); *Patrick v. Reliance Standard Life Ins. Co.*, 2016 WL 4573877, at *12, *14 (D. Del. Aug. 31, 2016) ("*Patrick I*"). The three opinions issued by the Magistrate Judge, District Judge, and Third Circuit all described Dr. Patrick as a gastroenterologist. *See Patrick III*, 694 F. App'x. at 96 (noting that Dr. Patrick's injury "prevented her—for a time, at least—from performing her duties as a gastroenterologist"); *Patrick II*, 2016 WL, at *2 (stating that due to her injury, Dr. Patrick "was no longer able to perform her work as a full-time gastroenterologist"); *Patrick I*, 2016 WL, at *1 ("Dr. Patrick began working for MAGIC as a gastroenterologist in 1996."). Reliance did not object to the courts' characterizations of Dr. Patrick's occupation. The Third Circuit filed its opinion affirming the District Court's granting of summary judgment in Reliance's favor in June 2017.

7

From 2014 through the end of 2018, Reliance did not require Dr. Patrick to

provide medical records to establish her continued disability. AR205. In

December 2018, however, it asked Dr. Patrick to provide "updated medical

evidence of [her] Total Disability." AR205. Dr. Patrick confirmed in response to

that request that she was working part time and performing a limited number of

colonoscopies and that she was receiving treatment from Dr. Charles Jobin at

Columbia. (Dr. Bigliani had retired in 2014.) Reliance then forwarded to Dr.

Jobin an APS, which he completed on December 18, 2018. D.I. 24 ¶ 15; D.I. 31 ¶

15; AR2413. In the "Diagnosis and Concurrent Conditions" section of the APS,

Dr. Jobin wrote "Left Scapulothoracic Bursitus" (that is, bursitis in the *left*

shoulder). In the "Additional Comments" section of the APS, Dr. Jobin wrote:

"may return to work, no restrictions." D.I. 27 at 4; D.I. 29 at 4; AR2413.

On January 22, 2019, Reliance sent Dr. Patrick a letter, notifying her that her

benefits were being terminated based on Dr. Jobin's "may return to work, no

restrictions" comments in the December 2018 APS. The letter stated in relevant

part:

> Briefly stated, you submitted a claim to [Reliance] for
> Total Disability from your Regular Occupation as an
> Internal Medicine Specialist. *Your claim for [long term
> disability] benefits was approved, as we determined you
> became Totally Disabled on July 10, 2008*, and monthly
> [long term disability] benefits first became payable in
> October 2008. Since that time, we have periodically
> requested updated medical evidence of Total Disability.

8

Our most recent update prior to this year was made in
2013. . . .

Per our request, Dr. Charles Jobin completed an
Attending Physician's Statement (hereinafter "APS") on
December 18, 2018. The APS indicated a diagnosis of
left shoulder bursitis (ICD-10-CM code M75.52). Dr.
Jobin noted, unequivocally, in the additional comments
section of the form that you "may return to work no
restrictions."

*We are not in a position to reach a conclusion that is
contrary to your own physician's opinion: that you are
no longer incapable of performing work at your Regular
Occupation without restrictions.*

We do take notice of your statements on the
Supplementary Report for Continued [long term
disability] Benefits you completed on December 17,
2018. Specially, you stated that you see patients in your
office, perform colonoscopy and endoscopy procedures,
and review and analyze test results. You also wrote that
you work approximately 24 hours per week. While it
may be your own personal choice to place a limitation on
your employment, it is inconsistent with your own
physician's authored opinion on the APS. As discussed
above, Dr. Jobin specifically took the time to hand write
his opinion of your functional status on the APS.

Consequently, *we have determined that you no longer
satisfy the definition of Total Disability* and your claim
has now been closed.

AR205 (emphasis added).

On the same day Reliance sent the letter but before Dr. Patrick received it,

Dr. Patrick called Reliance to determine whether Reliance had received certain

medical records it had requested from Dr. Jobin. AR2531. The Reliance claims

9

examiner who spoke with Dr. Patrick informed her that "those requests were
outstanding" but that Reliance had received the December 2018 APS from Dr.
Jobin and closed her claim based on Dr. Jobin's "may return to work, no
restrictions" comments.  According to the examiner's notes of the call:

> [Dr. Patrick] explained that Dr. Jobin was likely referring
> to her L[eft] shoulder bursitis.  [Dr. Patrick] indicated
> that the long[-]standing cause of [her disability] was her
> R[ight] shoulder/lack of trapezius muscle.  [Dr. Patrick]
> indicated that the lack of functionality in her R[ight]
> arm/shoulder has caused over compensation with the
> L]eft] side and this is the D[iagnosis] indicated on the
> APS.  She guessed that Dr. Jobin's statement re her
> ability to [return to work] w/o restrictions may have been
> limited to the issue with her L[eft] shoulder.

> [Dr. Patrick] stated that she cannot work more than she is
> working presently due to her R[ight] shoulder.  She has
> had meetings with managing physicians at her practice,
> who only agreed to allow her to work performing
> colonoscopies on a limited basis due to her limited
> functionality.  Returning to a full-time schedule and
> performing a 10-12 colonoscopies per day would expose
> the practice to liability and her inability to perform same
> on a full-time basis would not be consistent with her
> physical ability.

AR2531.  The examiner told Dr. Patrick that once he received additional records
from Dr. Jobin he would "see what direction to take after conferring with
management."  *Id.*

    Dr. Patrick called the examiner back later that day and left a voice mail
message informing him that she had "made an [appointment] for Dr. Jobin on

[February 8, 2019] [because] the last [appointment] was for injections and not 'concerning her disability' and she felt that he would see her again to make an opinion as to her other shoulder." AR2530. In response to the voice mail message, the examiner told Dr. Patrick in an email that he was "awaiting Dr. Jobin's records" but that "as of this writing the [long-term disability] claim is closed." AR2531. The examiner stated that he would "contact [Dr. Patrick] if there is a change in our position." AR2531.

Reliance received an updated APS from Dr. Jobin on February 11. The updated APS indicated that Dr. Jobin had seen Dr. Patrick on February 8, 2019 in his office. AR2423. In the "Diagnosis and Concurrent Conditions" section of the APS, Dr. Jobin listed both left shoulder bursitis and the right shoulder injury that had resulted in Dr. Patrick's disability. AR2422. In the "Additional Comments" section of the form, Dr. Jobin wrote: "ongoing restriction of limited work hours and number of procedures." AR2415; *see also* AR2423. Dr. Jobin further stated in the APS that Dr. Bigliani had referred Dr. Patrick to him as a patient in 2014 and that Dr. Patrick's progress with respect to her right shoulder had remained "unchanged" since the referral. AR2422–2423. Dr. Jobin also stated that Dr. Patrick's "prognosis" was "permanent partial disability." AR2423.

On February 13, Reliance informed Dr. Patrick that its decision to deny her claim "will stand." AR2532.

11

In May 2019, Dr. Patrick filed an administrative appeal of the claim denial.

She attached to the appeal a sworn declaration from Dr. Jobin that reads in relevant

part:

> 3. In 2010, Dr. Bigliani concluded Dr. Patrick suffered from a permanent partial disability that resulted from permanent and complete transection of the right spinal accessory nerve and subsequent total irreversible atrophy of the entire right trapezius muscle (injury to Dr. Patrick's right upper extremity and shoulder). *Dr. Bigliani also concluded this condition permanently affected Dr. Patrick's ability to return to practice and perform GI procedures on a full-time basis.*

> 4. *I agree and concur with Dr. Bigliani's conclusions and further conclude Dr. Patrick suffers from a permanent partial impairment as a result of this condition, which affects her ability to perform GI procedures on a full-time basis.*

> 5. Several years ago, I diagnosed Dr. Patrick with a second orthopedic condition - chronic <u>left</u> shoulder scapulothoracic bursitis (bursitis). This condition is most likely due to asymmetry resulting from Dr. Patrick's permanent injury to the right upper extremity and shoulder.

> 6. I have treated Dr. Patrick's bursitis by injecting her left scapulothoracic bursa with a combination of lidocaine and steroids. These injections provide temporary relief for a few months. *This treatment will not permit Dr. Patrick to return to her practice and perform GI procedures on a full-time basis.*

> 7. . . . *At the time I prepared, signed and sent the [initial] Attending Physician Statement, I was merely addressing Dr. Patrick's left shoulder bursitis condition*

12

*and not the injury to Dr. Patrick's right upper extremity
and shoulder.*

8.  Subsequently, Dr. Patrick advised me that her
Reliance disability benefits had been terminated due to
[the initial] Attending Physician Statement. . . .

9.  Reliance misunderstood and/or misconstrued
the information I was attempting to communicate about
*Dr. Patrick's inability to return to practice and perform
GI procedures on a full-time basis.*

10.  Therefore, I completed a second Attending
Physician Statement to clarify the misunderstanding. . . .

11.  *To be very clear, Dr. Patrick has suffered from
a permanent partial impairment due to the injury to her
right shoulder and upper extremity since 2010.  The
injury to her right upper extremity and shoulder limits
her ability to perform GI procedures on a full-time basis.*
This condition has been permanent and irreversible since
2010.  Additionally, Dr. Patrick suffers from left shoulder
chronic bursitis, which may further limit her ability to
perform GI procedures.

AR2403–04 (underline in original; italics added).

Reliance denied the appeal in August 2019.  In its letter informing Dr.

Patrick of the denial, Reliance stated:

[I]t was found, based on your job title as a
Gastroenterologist, and your job's listed demands and/or
requirements, your *regular occupation* would be
considered to be that of a[n] Internal Medicine Specialist.
As such, your *regular occupation* would be considered as
light work activity.  Thus, your claim for [long term
disability] benefits was assessed based upon your ability
to not only perform the occupation's material duties as an

13

> Internal Medicine Specialist but also this specific
> exertion level.

AR2582 (emphasis in original).  Reliance noted in its letter that it had relied on the

conclusions of Dr. Mauro Zappaterra.  Although Dr. Zappaterra found, based on

his review of Dr. Patrick's medical records, that her right shoulder injury "causes

permanent restrictions and limitations due to fatigue and weakness of the right

upper extremity" and that she "would be unable to perform sustained activities

with the right upper extremity," he concluded that Dr. Patrick "had work capacity

on a full time and consistent basis as of 12/18/2018."  AR2585.  It is undisputed

that Dr. Zappaterra did not consider in forming these conclusions that Dr. Patrick

was a gastroenterologist and did not find that Dr. Patrick was capable of

performing on a full-time basis gastroenterological procedures.  AR2541.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of

demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  If the burden of persuasion at trial would be on

the non-moving party, then the moving party may satisfy its burden of production

by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

15

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[2] *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

## B.   ERISA

ERISA authorizes a plan beneficiary "to recover benefits due to [her] under the terms of [the] plan, . . . or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A decision to deny benefits under ERISA is reviewed "under an arbitrary and capricious standard where . . . the plan grants the administrator discretionary authority to determine eligibility for benefits." *Miller v. Am. Airlines Inc.,* 632 F.3d 837, 844–845 (3d Cir. 2011) (citations omitted). The parties do not dispute that Reliance has discretionary

---

[2] Reliance argues that "the non-moving party is not entitled to the usual inferences in its favor" in ERISA cases. D.I. 25 at 3–4. The Third Circuit, however, has consistently applied the usual summary judgment standard in ERISA cases. *See e.g., Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 844 (3d Cir. 2011); *Patterson v. Aetna Life Ins. Co.,* 763 F. App'x. 268, 270 n.4 (3d Cir. 2019).

authority to determine benefits, so the arbitrary and capricious standard applies here. "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 845 (internal quotation marks and citation omitted). Under this standard, "[the court] will defer to an administrator's reasonable interpretation of ambiguous plan language, but an administrator's interpretation may not conflict with the plain language of the plan." *Patterson v. Aetna Life Ins. Co.,* 763 F. App'x. 268, 270–271 (3d Cir. 2019) (internal citations omitted).

## III.   ANALYSIS

Reliance had paid Dr. Patrick disability benefits from 2008 through 2018 based on its finding that Dr. Patrick's right shoulder injury had rendered her unable to perform gastroenterological procedures on a full-time basis. In other words, Reliance treated Dr. Patrick as if she were a disabled gastroenterologist. As Reliance's examiner concluded in 2009, Dr. Patrick's "major problem was [a] lack[] [of] endurance to perform colonoscopy and gastroscopy due to weakness." AR2458. That conclusion was consistent with Dr. Bigliani's medical records and the findings he set forth in the APS forms he completed at Reliance's request. Those records, the APS forms, and Reliance's internal examiner notes also leave no doubt that the only injury thought by Reliance and Dr. Bigliani to be responsible for Dr. Patrick's disability was the injury to her *right* shoulder.

17

Reliance's reliance on Dr. Jobin's December 2018 APS to terminate Dr. Patrick's benefits and its rejection of Dr. Jobin's February 2019 APS and sworn declaration were therefore arbitrary and capricious. The December 2018 APS made no mention of Dr. Patrick's right shoulder injury; and, having previously received Dr. Bigliani's March 2010 examination notes, Reliance was on notice that Dr. Patrick had suffered injuries to both of her shoulders. Accordingly, Reliance had no reason to dismiss out of hand Dr. Patrick's "guess" that Dr. Jobin's "may return to work, no restrictions" comments in the December 2018 APS applied only to Dr. Patrick's left shoulder. More importantly, Reliance had no reasonable basis to reject Dr. Jobin's February 2019 APS and his sworn declaration. Those documents confirmed that Dr. Jobin agreed with Dr. Bigliani's assessment that Dr. Patrick's right shoulder injury rendered her permanently disabled from practicing as a full-time gastroenterologist and they clarified (to the extent clarification was necessary) that Dr. Jobin's comments in the December 2018 APS addressed only the bursitis in Dr. Patrick's left shoulder and not the injury to her right shoulder. No medical note or opinion in the record contradicts or even calls into question Dr. Jobin's conclusion that Dr. Patrick was unable as of 2019 to practice as a full-time gastroenterologist.

Reliance does not challenge in this case Dr. Jobin's determination that Dr. Patrick is unable to practice full-time as a gastroenterologist. Instead, it argues that

Dr. Patrick's "regular occupation" is not a gastroenterologist at all but rather an

internal medicine specialist and that Dr. Patrick has never demonstrated that she is

unable to practice as a full-time internal medicine specialist.  Reliance summarizes

its argument as follows:

> [Dr. Patrick] bases her disability claim exclusively on her
> inability to perform GI procedures full-time.  But this
> policy does not provide insurance for that.  It pays a
> disability benefit when a claimant is unable to perform
> the material duties of her Regular Occupation as
> performed in the national economy.  Because Plaintiff's
> Regular Occupation does not require full-time
> performance of GI procedures, the claim denial must be
> upheld.

D.I. 25 at 17.

Reliance first hinted that it would take this newfound position in the January

2019 letter it sent to Dr. Patrick, informing her of its decision to terminate her

benefits.[3]  I say "hinted" because the thrust of the letter is that Reliance decided to

---

[3] Reliance claims that it conducted an internal "vocational review" in November
2008 and concluded that Dr. Patrick's regular occupation was an internal medicine
specialist.  There is, however, no record evidence that Reliance ever shared that
conclusion with Dr. Patrick before 2019.  Moreover, the three-page "vocational
review" consists of nothing more than (1) a cover sheet, (2) a page with five lines
of text that summarize the definition and tasks of an internal medicine specialist as
that term is defined in the Department of Labor's Dictionary of Occupational Titles
(DOT), and (3) a page that lists the DOT's physical demands, aptitudes, and other
"occupational requirements" of an internal medicine specialist.  AR222–224.
There is no discussion or analysis in the "vocational review."  In any event, as
discussed more fully below, the record evidence establishes that Dr. Patrick was
working in 2008 as a gastroenterologist, not an internal medicine specialist; and it
is undisputed that from 2008 to 2018 Reliance approved disability benefits for Dr.

terminate Dr. Patrick's benefits based on its determination that she "no longer"

qualified for benefits because of Dr. Jobin's "may return to work, no restrictions"

comments in his December 2018 APS. The term "internal medicine specialist" is

mentioned only once in the three-page, single-spaced termination letter. The

sentence in which the term appears reads: "Briefly stated, you submitted a claim to

[Reliance] for Total Disability *from your Regular Occupation as an Internal*

*Medicine Specialist*." AR205 (emphasis added). This statement is both odd and

misleading. It is odd because a person does not submit a claim *from an*

*occupation*. It is misleading, if not outright false, because in the "Occupational

Title" box in the claim form she submitted to Reliance, Dr. Patrick wrote

"gastroenterologist." To be clear, there is no record evidence that Dr. Patrick ever

submitted a claim "from," as, or for benefits to compensate her as an internal

medicine specialist.

Reliance first made clear its newfound position that Dr. Patrick is not a

gastroenterologist in its August 2019 rejection of Dr. Patrick's administrative

appeal.[4] Reliance told Dr. Patrick in this letter that "it was found, based on your

_____

Patrick because she was unable to perform gastroenterological, not internal
medicine specialist, procedures.

[4] Reliance argues that because Dr. Patrick did not administratively appeal
Reliance's classification of her "regular occupation" as an internal medicine
specialist she has waived her right to challenge that classification in this lawsuit.
Reliance, however, did not apprise Dr. Patrick until it rejected her administrative

20

job title as a Gastroenterologist, and your job's listed demands and/or

requirements, [that] your *regular occupation* would be considered to be that of a[n]

Internal Medicine Specialist"; that "[a]s such, your *regular occupation* would be

considered as light work activity"; that "your claim for [long term disability]

benefits was assessed based upon your ability to not only perform the occupation's

material duties as an Internal Medicine Specialist but also this specific exertion

level"; and that, based on Dr. Zappaterra's findings, "the severity of [Dr. Patrick's]

symptoms does not rise to the extent that she is so precluded from performing the

material duties or level of physical exertion of her *regular occupation* . . . of an

---

appeal that it was terminating her benefits based on the theory that Dr. Patrick's
regular occupation as of 2019 was not a gastroenterologist. Reliance stated in the
January 2019 termination letter that "[w]e are not in a position to reach a
conclusion that is contrary to your own physician's opinion that you are *no longer*
incapable of performing work at your Regular Occupation without restrictions."
AR205 (emphasis added); *see also id.* ("[W]e have determined that you *no longer*
satisfy the definition of Total Disability") (emphasis added). Dr. Patrick's
occupation, however, had never changed between 2008 and 2019 and therefore
there was no reason for Dr. Patrick or her counsel to infer from Reliance's odd and
misleading statement that she "submitted a claim . . . from [her] Regular
Occupation as an Internal Medicine Specialist" that the identity or scope of her
occupation had anything to do with Reliance's determination that she *no longer*
qualified for disability benefits. The only thing that had changed was that Reliance
had come into possession of an APS in which Dr. Jobin had stated "may return to
work, no restrictions." Dr. Jobin's comments were the focus of Reliance's
termination letter and Dr. Patrick's counsel reasonably made those comments the
focus of the administrative appeal. Accordingly, I reject Reliance's argument that
Dr. Patrick waived her right to challenge in this case Reliance's newfound position
about Dr. Patrick's regular occupation.

Internal Medicine Specialist in the national economy." AR2585.  This is the same argument Reliance presses in this case.

Reliance's abrupt change in how it construed Dr. Patrick's "regular occupation" was unreasonable, unsupported by substantial record evidence, and in conflict with the policy's unambiguous terms.  The change was unreasonable because, for the ten years leading up to 2019, Reliance had in effect, if not expressly, treated Dr. Patrick as if her job as a full-time gastroenterologist was her "regular occupation" as defined by the policy.  Reliance paid disability benefits to Dr. Patrick for more than a decade because she was unable to perform on a full-time basis gastroenterological— not internal medicine specialist— procedures.  It is undisputed that colonoscopies and gastroscopies are gastroenterological, not internal medicine specialist, procedures. *See FREIDA Gastroenterology (IM) Residency and Fellowship Listing,* AM. MED. ASS'N https://freida.ama-assn.org/specialty/gastroenterology-im (last visited Mar. 19, 2021) (noting that gastroenterologists "perform[] complex diagnostic and therapeutic procedures using endoscopes to visualize internal organs" and are "required" to have "good hand-eye coordination . . . to perform endoscopic procedures, which are used to help diagnose and treat many diseases of the digestive system"); *see also* D.I. 25 at 11 (Reliance stating that "[t]he duties of an Internal Medicine Specialist do *not* include performing GI procedures.") (emphasis in original).

22

Reliance's change in position was also unreasonable because it was unsupported by the record evidence. The medical records on which Reliance relied in approving disability benefits for Dr. Patrick between 2008 and 2018 described her as a gastroenterologist. To the extent those records stated that Dr. Patrick was disabled, they made clear that she was disabled because she could not perform colonoscopies and gastroscopies on a full-time basis. None of the medical records described Dr. Patrick as an internal medicine specialist and none of them stated that she was unable to perform the duties of an internal medicine specialist. This makes sense since Dr. Patrick was Board Certified only in gastroenterology as of 2008, *see* AR1645, and there is no record evidence that she practiced any type of medicine other than gastroenterology as of 2008.[5]

It is true that Reliance described Dr. Patrick as an internal medicine specialist in some internal records it created before 2019, but Reliance described Dr. Patrick in those same records as a "GI specialist" and a "gastroenterologist." AR2458–59. More importantly, Reliance never told Dr. Patrick prior to 2019 that

---

[5] As noted above, under the terms of Dr. Patrick's November 1, 2005 employment agreement, she agreed "to provide internal medicine and gastroenterology services." AR1648. The policy defines "regular occupation," however, as "[t]he occupation the Insured is performing *when Total Disability begins.*" AR9 (emphasis added). It is undisputed that Dr. Patrick's disability began in 2008, three years after the date of the employment agreement. Reliance has pointed to no evidence in the record of Dr. Patrick working as an internal medicine specialist as of 2008.

her regular occupation was an internal medicine specialist as opposed to a

gastroenterologist; never took issue with Dr. Patrick's, MAGIC's, Dr. Bigliani's,

or Dr. Jobin's identification of her occupation as a gastroenterologist; and never

objected to the descriptions of Dr. Patrick as a gastroenterologist in the opinions

issued by the District Court Judge, Magistrate Judge, and Third Circuit panel in the

prior litigation between Reliance and Dr. Patrick.  The language Reliance used in

rejecting Dr. Patrick's administrative appeal is also telling.  Reliance wrote in that

regard: "our vocational staff reviewed all of the information contained within your

file, and it was found, underline based on your job title as a Gastroenterologist, and your

job's listed demands and/or requirements, your *regular occupation* would be

considered that of a[n] Internal Medicine Specialist."  AR2582 (italics in original;

underline added).  Dr. Patrick's job title—that is, her occupation—was

gastroenterologist.  It was *that* occupation's "listed demands"—i.e., colonoscopies

and gastroscopies—that Dr. Patrick was unable to perform on a full-time basis

because of the injury to her right shoulder.  And Reliance based its decision to

award Dr. Patrick disability benefits from 2008 to 2018 precisely on her inability

to perform *those* demands.  Reliance points to no record evidence that shows any

discussion, let alone consideration, before 2019 of Dr. Patrick's ability or lack of

ability to perform internal medicine specialist procedures or tasks.

Finally, Reliance's newfound position that Dr. Patrick's regular occupation is an internal medicine specialist conflicts with the plain language of the policy. Under the policy:

> "Regular Occupation" means *the occupation the Insured is routinely performing* when Total Disability begins. [Reliance] will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

AR9 (emphasis added).  As discussed above, the occupation Dr. Patrick was routinely performing as of 2008 was that of a gastroenterologist.  Reliance has not cited any record evidence that shows that Dr. Patrick was routinely performing as an internal medicine specialist in 2019 when it terminated her benefits.

Reliance states in its briefing that the disclosure in the policy that Reliance will "look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale" "is determinative of [Dr. Patrick's] Regular Occupation claim." D.I. 29-1 at 1.  According to Reliance, because gastroenterologist is not listed in the Department of Labor's Dictionary of Occupational Titles (DOT), it is not "normally performed in the national economy" and therefore is not an occupation. *See* D.I 33 at 3 (Reliance arguing that "[Dr. Patrick's] position is belied by the fact that 'Gastroenterologist' is not identified in the DOT as an Occupation."); Hr'g Tr. at 11:10–14, Feb. 12, 2021 (Reliance's counsel arguing: "[T]he point to be made is

25

that there is this government-based system of identifying occupations and it's called the Dictionary of Occupational Titles. It's standardized occupations. Gastroenterologist is not an occupation."). The notions that a gastroenterologist is not an occupation performed in the national economy and that a gastroenterologist is not an occupation are, to be frank, ridiculous. Reliance itself acknowledged in its rejection of Dr. Patrick's administrative appeal that her occupation—i.e., her "job title"—was that of gastroenterologist. AR2582.[6] Reliance cites, and I know of, no ERISA provision or court decision that precludes the recognition of an occupation not listed in the DOT. And it offers, and I can think of, no reason why such a rule should exist.

Reliance also seems to suggest that because gastroenterology is a branch of internal medicine and because completion of a residency in internal medicine is a prerequisite for a fellowship in gastroenterology there is no such thing as a gastroenterologist separate and apart from an internal medicine specialist. *See* D.I. 29-1 at 2. But the AMA website cited by Reliance in its briefing distinguishes between internal medicine specialists and gastroenterologists. *Compare FREIDA*

---

[6] "Occupation" was not a capitalized or specially defined term in the policy. It is therefore given its plain and ordinary meaning—i.e., "job." *See Occupation, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/occupation* (last visited Mar. 19, 2021) (defining "occupation" as "a person's job").

26

*Internal Medicine Gastroenterology (IM) Residency and Fellowship Listing,* AM.
MED. ASS'N, https://freida.ama-assn.org/specialty/internal-medicine (last visited
Mar. 19, 2021) (defining "general internal medicine specialists" as "uniquely
trained to apply scientific knowledge to the care of adults across the spectrum from
health to complex illness") *with FREIDA Gastroenterology (IM) Residency and
Fellowship Listing,* AM. MED. ASS'N https://freida.ama-
assn.org/specialty/gastroenterology-im (last visited Mar. 19, 2021) (defining
gastroenterologists as "internists who specialize in diagnosis and treatment of
diseases of the digestive organs").  And Reliance itself distinguishes
gastroenterologists from internal medicine specialists.  It acknowledges, for
example, that performing gastroenterological procedures "is not a duty of an
Internal Medicine Specialist."  D.I. 29-1 at 9; *see also* D.I. 25 at 11 (stating that
"[t]he duties of an Internal Medicine Specialist do *not* include performing GI
procedures.") (emphasis in original).

  The "national economy" language in the policy supports the conclusion that
Dr. Patrick is a gastroenterologist.  Colonoscopies and gastroscopies are not
"unique duties performed for a specific employer or in a specific locale."  On the
contrary, they are duties that gastroenterologists across the nation perform on a
routine basis.  *See FREIDA Gastroenterology (IM) Residency and Fellowship
Listing,* AM. MED. ASS'N https://freida.ama-assn.org/specialty/gastroenterology-im

(last visited Mar. 18, 2021) (noting that gastroenterologists "perform[] complex diagnostic and therapeutic procedures using endoscopes to visualize internal organs").   Had Reliance followed the language of the policy in 2019 (as it did from 2008 to 2018) and "looked at [Dr. Patrick's] occupation as it is normally performed in the national economy," Reliance would have found that Dr. Patrick was a gastroenterologist—and only a gastroenterologist.  Reliance's refusal to make that inquiry in 2019 and its decision instead to reclassify Dr. Patrick as an internal medicine specialist after it had repeatedly determined for over a decade that she was a disabled gastroenterologist was arbitrary and capricious.

## IV.    CONCLUSION

For the reasons discussed above, I will grant Dr. Patrick's motion for summary judgment and will deny Reliance's motion for summary judgment.  I will order Reliance to calculate and pay Dr. Patrick within 30 days the amount of benefits she is owed.  As Reliance did not contest Dr. Patrick's request for attorneys' fees and costs, I will grant that request pursuant to 29 U.S.C. §1132(g) and schedule a hearing to determine the amount of fees, costs, and interests Reliance owes to Dr. Patrick.

The Court will enter an Order consistent with this Memorandum Opinion.